```
                                                                    1
 1                    UNITED STATES DISTRICT COURT
 2                    SOUTHERN DISTRICT OF FLORIDA
 3                    CASE NO. 09-CR-20407-HUCK
 4   UNITED STATES OF AMERICA
 5
 6        vs.
 7   GARRY SOUFFRANT
 8   YVONNE SOUFRANT
 9   GAMALIEL SOUFFRANT,
10              Defendants
11                    TRIAL HELD 10-26-09
12               BEFORE THE HONORABLE PAUL C. HUCK
13                  UNITED STATES DISTRICT JUDGE
14   APPEARANCES:
15   FOR THE GOVERNMENT:     MICHAEL PATRICK SULLIVAN
16                           KELLY S. KARASE
17                           TODD W. MESTEPEY
18                           ASSISTANT UNITED STATES ATTORNEYS
19
20   FOR GARRY SOUFFRANT:    GLENN B. KRITZER, ESQ.
21                           TODD OMAR MALONE, ESQ.
22   FOR YVONNE SOUFFRANT:   PHILIP R. HOROWITZ, ESQ.
23   FOR GAMALIEL SOUFFRANT: HERBERT E. WALKER, ESQ.
24   REPORTED BY:            PATRICIA SANDERS, RPR
25                           Official Court Reporter
```

**I N D E X**

| | DIRECT | CROSS | REDIRECT |
|---|---|---|---|
| DAMIAN HUTTOE | 3 | 10 | |

3

1                THE COURT:  Call your first witness.
2                MR. MESTEPEY:  United States calls Damian Huttoe.
3                        WITNESS SWORN
4  Q.   Good afternoon.  Please state your name for the record.
5  A.   Damian Huttoe.
6  Q.   And where do you work?
7  A.   I am an agent with the FBI.
8  Q.   How long have you been with the FBI?
9  A.   A little over six years.
10 Q.   Prior to that where did you work?
11 A.   For the Alabama Department of Forensic Sciences where I was
12  employed as a forensic chemist.
13 Q.   Was that a part of the state police?
14 A.   Yes, it was.
15 Q.   How long were you there?
16 A.   A little over six years.
17 Q.   Where you did you go to college?
18 A.   I went to the University of Southern Mississippi.
19 Q.   What squad within the FBI are you currently assigned to?
20 A.   The Safe Streets Gang Task Force and Violent Crimes Squad.
21 Q.   How long have you been stationed in Miami?
22 A.   Three years.
23 Q.   Do you have any collateral duties besides your work with the
24  Gang Squad?
25 A.   I do.  I am on the Evidence Recovery Team, which is our version

1  of what you might know as CSI.
2  Q.   Were you working on May 15th, 2009?
3  A.   Yes, I was.
4  Q.   What were you doing that day?
5  A.   Conducting a search warrant.
6  Q.   Where were you conducting that search?
7  A.   I can't recall the specific address. If there's something that
8  would refresh my memory --
9  Q.   Did you write a report regarding this search?
10 A.   I did.
11 Q.   Would that report refresh your recollection regarding the
12 address?
13 A.   Yes, it would.
14          MR. MESTEPEY:  May I approach?
15          THE COURT:  You may.
16 Q.   Have you had an opportunity to review your report?
17 A.   Yes, sir.
18 Q.   Does it refresh your recollection?
19 A.   Yes, sir.
20 Q.   Where did the search take place?
21 A.   1535 SW 112th Avenue in Davie, Florida.
22 Q.   This search was pursuant to a search warrant?
23 A.   Yes.
24 Q.   Did you conduct the search with anyone else?
25 A.   Yes, sir. We had a team of approximately 35 agents, law

5

```
 1   enforcement officers and support staff.
 2  Q.   What was located there?
 3  A.   A residence located at that address.
 4  Q.   Do you know the owners of that residence?
 5  A.   I believe the Souffrants.
 6  Q.   Do you see them in the courtroom today?
 7  A.   Yes.
 8  Q.   Is this a husband and wife?
 9  A.   Yes, sir.
10  Q.   Do you know the husband's name?
11  A.   Garry Souffrant.
12  Q.   Do you see Garry Souffrant in the courtroom today?
13  A.   Yes, I do.
14  Q.   Please point him out and identify him by an article of clothing.
15            THE WITNESS:  The defendant at the table with the tan
16   jacket on.
17            MR. MESTEPEY:  If the record would reflect the witness has
18   identified the defendant Garry Souffrant.
19            THE COURT:  Yes.
20  Q.   Do you know his wife's name?
21  A.   I believe Yvonne.
22  Q.   Do you see her in the courtroom?
23  A.   I do.
24            MR. MESTEPEY:  Please point her out and identify her by an
25   article of clothing.
```

6

```
 1            THE WITNESS:  This woman seated at the corner of the table
 2   with a green jacket.
 3   Q.   Were the Souffrants present the day you conducted the search?
 4   A.   They were.
 5   Q.   Please explain to the jurors how you conducted the search.
 6   A.   Once the residence was secured, meaning entry had been made and
 7   persons inside the residence were identified and detained, a
 8   protective sweep was done of the property, meaning we searched for
 9   other persons inside the property.
10            We looked for weapons.  That is done as a protective
11   measure for the safety of the officers involved. Once that is done
12   the residence and all of the location is photographed prior to a
13   search of the residence. This particular case after the photographs
14   were taken narcotics and money dogs were sent through the house in
15   order to smell or attempt to detect narcotics or large sums of cash.
16   After that was conducted an exhaustive hand search was conducted of
17   the property.
18   Q.   Showing you what has been marked for identification Exhibit
19   159 --
20            THE COURT:  Is this in evidence?
21            MR. MALONE:  We have no objection.
22            THE COURT:  It has to be in evidence before you can put it
23   on the screen.
24            MR. MESTEPEY:  I apologize.
25            THE COURT:  What was the number?
```

7

```
1          MR. MESTEPEY:  159.
2   Q.   Agent, have you seen this photograph before?
3   A.   Yes.
4   Q.   What does this photograph depict?
5   A.   These are photographs of the property that was searched that
6    day. These are aerial photographs.
7   Q.   Was there more than one property in that area?
8   A.   Yes, sir.
9   Q.   The two photographs here which is the property you searched?
10  A.   The top photograph is the property I searched.
11  Q.   Is this also a photograph of the property?
12  A.   It appears to be.  It's a little blurry on the screen but it
13   appears to be.
14  Q.   Did you have an opportunity to walk the entire perimeter of the
15   area?
16  A.   I did.
17  Q.   Can you describe the size of the property?
18  A.   It was quite expansive.
19  Q.   Showing you what has been marked for identification as
20   Government's Exhibit 215 A through O --
21           THE COURT:  Any objection?
22           MR. KRITZER:  No objection.
23           THE COURT:  They will be received.
24  Q.   Agent Huttoe, this is Exhibit 215 A. Please tell the jury what
25   this depitcts.
```

8

| | | |
|---|---|---|
| 1 | A. | The initial photograph of the property the day we searched it. |
| 2 | Q. | Can you tell the jurors what this picture is of? |
| 3 | A. | A photograph of the garage entryway to the property.  The three |
| 4 | | cars inside the garage belonged to the property.  The blue car is |
| 5 | | mine. |
| 6 | Q. | Do you remember the kind of cars inside the garage? |
| 7 | A. | I believe a Range Rover, a Mercedes and a Rolls Royce. |
| 8 | Q. | What is this a picture of? |
| 9 | A. | A picture of the license plate and back end of the Range Rover. |
| 10 | Q. | Showing you 215 D.  What does that depict? |
| 11 | A. | That's a picture of the license plate and the back end of the |
| 12 | | Mercedes. |
| 13 | Q. | 215 E. |
| 14 | A. | Again the license plate at the back end of the Rolls Royce. |
| 15 | Q. | 215 F. |
| 16 | A. | A side view of the Rolls Royce. |
| 17 | Q. | Were there any other cars at the residence that were not in |
| 18 | | these photographs? |
| 19 | A. | I believe there were a couple of cars in the front that may have |
| 20 | | been in the initial photographs overall.  At this location this was |
| 21 | | it. |
| 22 | Q. | The next photograph 215 G. What does this depict? |
| 23 | A. | The master bathroom of the residence. |
| 24 | Q. | The next photograph 215 H. What does that depict? |
| 25 | A. | That is the den and breakfast area of the property as looking at |

9

1  it from the kitchen towards the rear of the house.
2  Q.  215 I. What does that depict?
3  A.  The opposite angle of what we were just looking at standing in
4  the breakfast area looking back into the kitchen.
5           THE COURT:  Are we going to be talking about anything found
6  in these areas or are you just showing us what the place looks like?
7           MR. MESTEPEY:  We will be showing pictures of the home.
8           THE COURT:  I don't think we need to see every room in the
9  house.
10          MR. MESTEPEY:  May we go through one more picture?
11          THE COURT:  I guess so.
12 Q.  This is 215 J. Please describe this.
13 A.  A home theater room. You can see the initials in the top of the
14 screen.  There are two different projection systems.  There was a
15 drop down screen which is the white screen and a large flat panel
16 t.v. behind that, surround sound.  It was very well done.
17 Q.  There are posters on the wall.  Did you see those?
18 A.  I did. They were movie release posters. I believe --
19          MR. HOROWITZ:  I can going to object as to relevance.
20          THE COURT:  Sustained.  Move on.
21 Q.  Can you describe the rest of the room not depicted?
22 A.  I believe there was a snack bar glassed in with candy selections
23 and a popcorn --
24          THE COURT:  We're not interested in popcorn and candy.
25 Let's move on.

```
 1              MR. MESTEPEY:  Government has no further questions.
 2              THE COURT:  Cross examination.
 3              MR. MALONE:  Not on behalf of Mr. Souffrant.
 4              MR. HOROWITZ:  No questions.
 5   BY MR. WALKER:
 6   Q.   During this search warrant did you recover any evidence relating
 7    to Gamaliel Souffrant, the gentleman sitting here?
 8   A.   I believe there was a consent search of his property, which I
 9    participated in.
10   Q.   When did you do that?
11   A.   The same day.
12   Q.   What if anything did you recover?
13   A.   I would have to look at the evidence recovery log to be able to
14    recall.
15   Q.   Anything of a criminal nature that comes to mind?
16   A.   I believe a large number of documents. I believe we took some
17    electronics from that property as well.
18   Q.   Anything about the documents themselves or the electronics that
19    led you to believe they were criminal, apart from what anyone else
20    at the U.S. Attorney's Office or someone else may have said?
21   A.   If I recall correctly, without the exact list in front of me, I
22    believe there were financial documents and they were recovered for
23    further analysis.
24   Q.   There was nothing about the financial documents that says this
25    was anything illegal as you looked at it?
```

```
 1  A.    Other than they were a large amount of financial documents that
 2  needed to be reviewed.  That is what we were asked to look for.
 3  Q.    You just grabbed them and took them with you?
 4  A.    We photographed and collected them.  It is a very thorough
 5  process. Again, without the list of everything taken I can't tell
 6  you the specifics of what were taken.
 7              MR. WALKER:  That's all I have.
 8              THE COURT:  Redirect?
 9              MR. MESTEPEY:  No, Your Honor.
10              THE COURT:  Thank you.  Do you have another witness as
11  brief as this?
12              MR. MESTEPEY:  No, Your Honor.
13              THE COURT:  Ladies and gentlemen, we're going to call it a
14  day.  I am going to ask you to do a couple of things. If you would
15  give us your contact information so Ms. Williams can contact you in
16  case there is any problem.
17          Also, if for some reason there is a problem in the morning
18  if you would please call and let her know so we can plan on that.  I
19  am going to ask you to do me this favor as well.  Because some of
20  you are not used to coming downtown and sometimes traffic is a
21  little heavier than you anticipate I will ask you to try to
22  incorporate a little extra time into your travel plans.
23          So try to be here a little early.  There are the makings
24  for coffee, as well as juice, in the jury room.  That way you can
25  come in relaxed rather than running in out of breath at the last
```

1  minute.  As you probably know we cannot get started until everyone
2  is here. Finally, please don't discuss the case.  You will have
3  plenty of time to do that after the case is over. So just go
4  home, relax, don't worry about the case and we'll see you back at
5  830 tomorrow morning.
6                        JURY EXCUSED
7          THE COURT:  Please be seated.  I think I am going to revise
8  my schedule. I didn't realize that we were going to have this kind
9  of detail.  I don't want to be critical. I think the point was made
10 when you showed the aerials of the property.  It's a very fancy
11 home. To go into the details, they have a popcorn machine, is not
12 all that important in this case.  You are going to bore the tears
13 out of everyone, including the Court.  The pictures kind of speak
14 for themselves. It's a very fancy place.  All right.  We'll see you
15 a little before 830 tomorrow morning.
16                      COURT IN RECESS

```
 1                         - - -
 2                   C E R T I F I C A T E
 3         I hereby certify that the foregoing is an accurate
 4  transcription of proceedings in the above-entitled matter.
 5
 6                                    /S/PATRICIA SANDERS
 7  _____                     _____
 8  DATE FILED                        PATRICIA SANDERS, RPR
```